# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **WILLIE PAUL BEVERLY** <br>     La. DOC #117106 <br> VS. <br><br> **WARDEN ROBERT TAPPIN, ET AL.** | **CIVIL ACTION NO. 08-1145** <br><br> **SECTION P** <br><br> **JUDGE JAMES** <br> **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

*Pro so* plaintiff Willie Paul Beverly filed the instant civil rights complaint (42 U.S.C. §1983) on July 9, 2008, in the United States District Court for the Eastern District of Louisiana. It was subsequently transferred to this court and plaintiff was allowed to proceed *in forma pauperis*. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he is incarcerated at the Morehouse Parish Detention Center (MPDC), Collinston, Louisiana and he complains of various conditions of confinement at that institution.

He sues MPDC Warden Robert Tappin, Sr., Assistant Warden Isaac Brown, Nurse Grayson and Morehouse Parish Sheriff Denny McGrew. He asks the court to transfer him to another facility and, he seeks compensatory damages for "... mental anguish, stress and taxes..." He also seeks a preliminary injunction directing the defendants to update the prison law library and an injunction directing an investigation into the "abuse [and] neglect" toward the inmates.

In a separate pleading plaintiff requested the appointment of counsel. [rec. doc. 7]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint, including plaintiff's requests for injunctive relief be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §1915 and §1915A.

## Statement of the Case

Plaintiff is an LDOC inmate who is incarcerated at the MPDC. He complains about (1) inadequacies in the MPDC Law Library; (2) inadequacies in the grievance process; (3) MPDC's failure to provide educational programs, (4) MPDC's handling of incoming legal mail, (5) inadequacies in the medical department, (6) the collection of taxes on commissary purchases by inmates, (7) verbal and physical abuse of the inmates, and, (8) lack of recreation. [rec. doc. 1] In an amended complaint filed on October 22, 2008, plaintiff complained that the prison administration will not purchase eyeglasses for him; that he has been exposed to "pepper spray" used against other inmates; and that the prison's food service is unsanitary. [rec. doc. 12] On October 30, 2008, plaintiff filed a motion for a Temporary Restraining Order (TRO) seeking transfer to another facility based on plaintiff's fear of retaliation and his claim that the MPDC's law library is inadequate. [rec. doc. 14] On October 31, 2008, the court denied his request for a TRO and referred his request for preliminary injunction to the undersigned for review, report, and recommendation. [rec. doc. 15]

## Law and Analysis

### 1. Appointment of Counsel [rec. doc. 7]

Plaintiff seeks court-appointed counsel to assist him in the prosecution of a civil rights complaint which alleges various unconstitutional conditions or circumstances of confinement. Initially, the undersigned notes that plaintiff is proceeding in *forma pauperis.* A review of the application to proceed *in forma pauperis* establishes that he should be considered indigent for the purposes of this evaluation.

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28

U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file his original complaint setting forth his cause of action against the named defendants. No special legal knowledge is required of plaintiff herein. He

was required to plead facts and he has first hand knowledge of the facts which form the basis of this action. The claims are not necessarily atypical of those often asserted in civil rights litigation and are not complex. Further, as is shown hereinafter, all of plaintiff's allegations have been accepted as true. Nevertheless, for the reasons that follow, it has been determined that plaintiff's complaint fails to state a claim for which relief may be granted and is thus subject to dismissal on initial review as provided by 28 U.S.C. §1915 and §1915A. Thus, appointment of counsel at this juncture would serve no useful purpose.

Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his behalf.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

*2. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the

4

court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint alleges facts sufficient to conduct and conclude a preliminary screening pursuant to §1915. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that his complaint is frivolous.

### 3. Law Library

Plaintiff complains that MPDC does not have adequate books, material or research supplies to assist inmates with ongoing legal matters. He claims that there are only nine law books and that there is no legal adviser or inmate counsel.

The adequacy of a prison law library is analyzed under the Constitution's guarantee that persons have a right of access to the courts. The facts so far alleged, construed in the light most

favorable to the plaintiff, simply do not support a claim that plaintiff has been denied his right of access to the courts based on alleged inadequacies of the prison law library. The right of access to the courts assures that no prisoner will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997).

However, prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims. See *Lewis v. Casey*, 518 U.S. at 356, 116 S.Ct. at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.")

Plaintiff's allegations, construed liberally and all taken as true for the purposes of this review, fail to demonstrate that the defendants denied him access to the courts as that term is defined in the jurisprudence cited above. The Supreme Court has not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a necessary legal document to a court. *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993), cert. denied, 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994) (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)); see also *Lewis v. Casey*, 518 U.S. at 354, 116 S.Ct. at 2181 ("It must be acknowledged that several statements in *Bounds* [*vs. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)] went beyond the right of access recognized in the earlier cases on which it relied, <u>which was a right to bring to court a grievance that the inmate wished to present</u>, see, e.g., *Ex parte Hull*, 312 U.S., at 547-548, 61 S.Ct., at 640-641; *Griffin v. Illinois*, 351 U.S.,

at 13-16, 76 S.Ct., at 588-589; *Johnson v. Avery*, 393 U.S., at 489, 89 S.Ct., at 750-751. <u>These statements appear to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court.</u> See *Bounds*, 430 U.S., at 825-826, and n. 14, 97 S.Ct., at 1497, and n. 14. <u>These elaborations upon the right of access to the courts have no antecedent in our pre- *Bounds* cases, and we now disclaim them.</u> To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires"); see also *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Clearly, plaintiff has not shown that he has been denied the right to prepare and transmit complaints and petitions to the courts. Further, even assuming that plaintiff would be able to demonstrate that the defendant somehow deprived him of his constitutional right of access to the courts, he must still allege facts to establish that he suffered some prejudice as a result of the deprivation. See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988). In *Lewis v. Casey*, the Court noted that prior "access to courts" jurisprudence "...did not create an abstract, freestanding right to a law library or legal assistance...", and that "...an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense..." The Supreme Court reaffirmed the longstanding requirement that inmates claiming a violation of their right of access must show actual injury. *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180. The Court also provided examples of "actual injury" noting, "[The inmate] might show, for example, that a complaint he

prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known, or that he had suffered some arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.*

Plaintiff has wholly failed to allege any <u>specific facts</u> establishing that he was or will be <u>actually</u> <u>prejudiced</u> in connection with any collateral attack or complaint concerning conditions of confinement. Since he as failed to show that he was denied access to courts and that he suffered prejudice as a result, his complaint fails to state a claim for which relief may be granted and is frivolous.

*4. Grievances*

Plaintiff also claims that the Law Library/Prison does not permit grievances and inmates who file grievances "have to worry about repercussions." He claims that inmates cannot complain to the warden, and, if they do, they are brought to "lock down." However, he admits that he has written grievances to the MPDC Administration and to LDOC and, while he fears retaliation, he has alleged no actual act of retaliation against him.

Plaintiff implies that the defendants have violated his rights by failing to provide adequate administrative remedies procedures. Such allegations, even if true, fail to state a claim for which relief might be granted since prisoners do not have a constitutionally protected right to a grievance procedure. The narrowing of prisoner due process protections announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims

8

that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"). See also *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required). Since plaintiff has no constitutionally protected right to a prison grievance procedure, his complaint fails to state a claim for which relief may be granted.

*5. Educational Opportunities*

Plaintiff claims that the facility offers no education programs; however, he concedes that there is a G.E.D. program that meets once a week, although the teacher is sometimes absent thus resulting in the cancellation of class. Plaintiff mistakenly assumes that he has a Constitutional right to a prison educational or vocational program. Such a claim would arise, if at all, under the due process clause of the Fourteenth Amendment.

In order to state a Constitutional claim for either a substantive or procedural due process violation, the plaintiff must demonstrate that he was "denied a cognizable liberty or property interest clearly established either by state law or the United States Constitution." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir.2000); accord *Sandin v. Conner*, 515 U.S. 472, 481-83, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (a prisoner has a liberty interest only in "freedom[s] from restraint ... impos [ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *Bryan v. City of Madison*, 213 F.3d 267, 274 (5th Cir.2000), *cert. denied*, 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001)(property interest). "While no State may deprive any person of life, liberty or property, without due process of law, it is well-settled that only a limited range of interests fall within this provision. Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 74

L.Ed.2d 675 (1983) (quotation and citation omitted). The "state has no constitutional obligation to provide basic educational or vocational training to prisoners." *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988). Therefore, plaintiff's claim to the contrary is frivolous.

*4. Incoming Legal Mail*

Plaintiff claims that there is no log of incoming legal mail and that legal mail is opened and checked before being delivered. He also complains that incoming mail addressed to prisoners in "lock down" is held until the prisoner is released from "lock down."

However, he does not allege that anyone in particular has ever tampered with or read any privileged mail of his. In any event, plaintiff's legal mail tampering claim implicates both his right of access to the courts and his right to free speech. To rise to the level of a constitutional violation of an inmate's right of access to the courts, the inmate must allege that his position as a litigant was prejudiced by the mail tampering. See *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992). Here, plaintiff has only asserted that the prison maintains no mail log; that legal mail is opened, but not necessarily read or otherwise tampered with. He has thus failed to state a cognizable constitutional claim. See *Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir.1993), *Walker v. Navarro County Jail*, 4 F.3d 410 (5th Cir.1993). Plaintiff's mail tampering complaint is frivolous.

*5. Medical Department*

Plaintiff claims that LDOC inmates are charged $70 for prescription eyeglasses, and that the nursing staff are on-call after hours. According to plaintiff, if Nurse Grayson is called in after hours, she will have the inmate responsible for the call locked up. He claims that on occasion, Corrections Officers dispense the wrong medication. He complains that these officers are not licensed medical personnel.

Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed

under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the actions of the defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in this means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived,</u> but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response </u>to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Further, the mere fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff has not alleged that any of the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. Further, even if he had made such a showing, he has failed to show that anyone actually drew such an inference and that their response to his or anyone else's complaints indicated that they subjectively intended that harm occur to him.

*Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The facts alleged herein simply do not support such a conclusion.

In his original complaint [rec. doc. 1] and in his amended complaint [rec. doc. 12] plaintiff also complains that LDOC inmates are charged for eyeglasses. The policy described by plaintiff is similar to "co-pay" policies or fee-for-service programs under which inmates must bear part of the cost of their treatment. Courts have found these polices constitutionally permissible so long as they do not interfere with timely and effective treatment of serious medical needs. *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir.1997) (co-pay policy); *Shapley v. Nevada Bd. of State Prison Comm's*, 766 F.2d 404 (9th Cir.1985) (co-pay policy); *Cameron v. Sarraf*, 2000 WL 33677584, at *3-5 (E.D.Va. March 17, 2000) (No. CIV.A.98- 1227-AM.) (co-pay policy); *Reynolds v. Wagner*, 936 F.Supp. 1216, 1225-1227 (E.D.Pa.1996) (fee-for-service-program); *Johnson v. Dept. of Public Safety and Correctional Services*, 885 F.Supp. 817 (D.Md.1995) (co-pay policy); *Hudgins v. DeBruyn*, 922 F.Supp. 144, 151 (S.D.Ind.1996) (prison policy which provided that inmates could obtain over-the-counter medicine at cost from institution commissary or as part of necessary treatment for serious medical condition did not constitute cruel and unusual punishment even though former policy generally provided medication free of charge in conjunction with inmate's use of sick-call process; inmate's serious medical needs would be met whether inmate was indigent or not).

Nothing in the deliberate indifference standard guarantees inmates the right to be entirely free from cost considerations relevant to medical decisions. *Reynolds*, 128 F.3d, at 175. It is only when medical care is denied to inmates because of their inability to pay that deliberate

indifference is implicated. See, e.g., *Collins v. Romer*, 962 F.2d 1508, 1514 (10th Cir.1992) (affirming district court finding that statute with no exceptions to the co-payment requirement would be unconstitutional because it would deprive an inmate of meaningful access to medical care); *Johnson*, 885 F.Supp. at 820 (holding statute constitutional "because the policy mandates that no one shall be refused treatment for an inability to pay, [and] the co-pay policy will not result in a denial of care, even for inmates who abuse the system"). Plaintiff's medical care complaint is frivolous.

## 6. Sales Tax

Plaintiff claims that the facility collects sales taxes of 7.5% to 10% on commissary sales. He suggests that this policy is unconstitutional but does not explain how he arrives at such a conclusion. To the extent that the policy described violates Louisiana Law, such a contention fails to state a claim for which relief may be granted. Section 1983 provides relief for invasions of rights protected under <u>federal</u> law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1997). To establish liability under 42 U.S.C. § 1983, a civil rights plaintiff must establish two elements: (1) state action, i.e., that the conduct complained of was committed under color of state law, and (2) a resulting <u>violation of federal law</u>, i.e., that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. See *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); see also *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir.2002).

## 7. Physical and Verbal Abuse

Plaintiff claims that the facility has a "known history" of corrections officers talking to inmates "like dogs." He claims that inmates are constantly threatened and that slapping is common. He complains both in his original complaint and in his amended complaint that inmates

are routinely "maced" and that excessive force is common and used to intimidate inmates. [rec. docs. 1 and 12]

Plaintiff, however, has never alleged that he was the victim of excessive force. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). While he has now claimed that fumes from the use of chemical sprays enter his dorm through the ventilation system, he has not shown that this exposure has resulted in any physical harm to him. Thus, he fails to state a claim for which relief may be granted.

Plaintiff claims that inmates have been verbally threatened by prison guards. Verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5 Cir.1993); *Siglar v. Hightower*, 112 F.3d 191 (5 Cir.1997).

## 8. Recreation

Plaintiff claims that inmates are permitted outdoor recreation only once a week and that if an inmate requests outdoor recreation he is maced and placed in lock down. Again, plaintiff does not suggest that he has been placed in lock down or maced.

Further, the Eighth Amendment does not mandate comfortable prisons; however, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999). Therefore, the conditions under which a prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits the unnecessary and wanton infliction of pain. See *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper*, 174 F.3d at 719 . First, there is an objective requirement to demonstrate conditions "so

serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the <u>unnecessary and wanton infliction of pain</u> implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

Conditions of confinement amounting to severe deprivations without penological justification violate a prisoner's rights under the Eighth Amendment; however, conditions of confinement that infringe upon the prisoner's constitutional rights may nevertheless pass Eighth Amendment scrutiny provided the conditions are reasonably related to legitimate penological interests. See *Rhodes*, 452 U.S. at 347, 101 S.Ct. 2392; *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir.1998). Moreover, prison officials are not required to adopt the policy least restrictive of prisoners' rights, so long as the policy itself is reasonable. *Talib*, 138 F.3d at 215 n. 4, citing *Turner v. Safley*, 482 U.S. 78, 90, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987).

Contrary to plaintiff's assertion, neither the Supreme Court nor the Fifth Circuit Court of Appeals has ever specifically held that inmates enjoy an <u>absolute right</u> of out-of-cell recreation or exercise. *Green v. Ferrell*, 801 F.2d 765, 771-72 (5th Cir.1986) (The Fifth Circuit set aside lower court's judgment requiring county jail to provide either outdoor exercise or an indoor exercise facility.); *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983) (The deprivation of exercise is not *per se* violative of the Eighth Amendment.)

The Fifth Circuit has always and only held that an <u>extended deprivation of exercise</u>

opportunities might impinge upon an inmate's Eighth Amendment rights depending upon the particular facts of a given case. *Green*, 801 F.2d at 771-72; *Ruiz*, 679 F.2d at 1152 (Factors, such as cell size, the amount of time the inmate spends in his cell each day, and the overall duration of confinement together with the inmate's physical and other needs must be considered in determining whether an inmate is denied the opportunity for regular physical exercise); *Montana v. Commissioners Court*, 659 F.2d 19, 22 (5th Cir. Unit A 1981); *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir.1979) ("[C]onfinement to a cell for twenty-three and one-half hours per day for periods of months and absence of outdoor exercise ... may make out an eighth amendment violation."). The United States Supreme Court as well as the courts of other circuits, have included exercise as one of the "basic human needs" protected by the Eighth Amendment. See, e.g., *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) ("Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets."; *Williams v. Greifinger*, 97 F.3d 699, 704 (2nd Cir.1996) ("... some opportunity for exercise must be afforded to prisoners."); *Allen v. Sakai*, 48 F.3d 1082, 1088 (9th Cir.1994) (a long-term deprivation of exercise is a denial of a basic human need in violation of the Eighth Amendment). The Fifth Circuit itself has acknowledged that "[i]nmates require regular exercise to maintain reasonably good physical and psychological health." *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.1982) (citing *Campbell v. Cauthron*, 623 F.2d 503, 506-07 (8th Cir.1980); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir.1979)).

In other words, under the Eighth Amendment, prison officials must, at a minimum provide an adequate opportunity for exercise – whether indoors or out. Furthermore, such claims

must be evaluated on a case-by-case basis and, in order to determine whether an inmate is being afforded an adequate opportunity to exercise, the court must generally consider a series of factors, including: (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day, and (3) the overall duration of his confinement. *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir.1986); *Ruiz*, 679 F.2d at 1152.

Here, plaintiff has not alleged the total deprivation of <u>exercise opportunities</u> – but rather only the denial of <u>out-of-cell</u> exercise opportunities, and that is insufficient to establish an Eighth Amendment violation.

### 9. Unsanitary Food Services

In his amended complaint, plaintiff complained that MPDC "... does not have a hot box to store inmate food." Instead, he claims that food is served from a rolling table brought from the kitchen to the dormitory. He claims that since the food is uncovered and traverses the length of the prison, that the food service is unsanitary. [rec. doc. 12] He suspects that this method of serving food is unsanitary, but offers no facts to substantiate his suspicion. Plaintiff's allegations are clearly conclusory and subject to dismissal for that reason.

### 10. Damages for Stress and Mental Anguish

Plaintiff prays for compensatory damages for "... mental anguish [and] stress." Title 42 U.S.C. § 1997e(e) provides, "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Recently, the Fifth Circuit Court of Appeals determined that with respect to the application of the above cited statutory provision, "... it is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) <u>applies to all federal civil actions in which a prisoner alleges a constitutional violation,</u> making compensatory damages for mental or emotional injuries non-recoverable, absent physical

injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

Thus, a prisoner's claim for mental anguish, coupled with his failure to allege physical injury, triggers the statutory bar of §1997e(e) precluding recovery of compensatory damages for emotional or mental injuries allegedly suffered as a result of a purported constitutional violation. Since he has alleged no physical injury as a result of the activities complained of, plaintiff's claims for suffering and mental anguish are frivolous.

*11. Investigation*

Plaintiff demands an investigation of the prison facilities. Again he fails to state a claim for which relief may be granted. There is no constitutional right to have someone investigated or prosecuted. See *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir.1990); *Autrey v. Mississippi*, 66 Fed. App'x. 523, 523 (5th Cir.2003) (per curiam).

*12. Conclusion/Order/Recommendation*

Plaintiff's Motion to Appoint Counsel [rec. doc. 7] is **DENIED.**

Furthermore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints including his request for a preliminary injunction [rec. doc. 1, 12, and 14] be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days**

**following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers at Monroe, Louisiana, this 3rd day of November, 2008.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE